E. Darwin Smith, J.
(dissenting.) In the conclusion to which my brethren have come, in this case, I cannot concur; and am not quite satisfied to let the decision pass with a simple silent dissent. The statute of 'frauds has been a most fruitful source of litigation. Chancellor Kent said the expense of its explanation might be put down at the sum of a million of pounds sterling, and upwards, in this country and in England. This great amount of litigation and expense has obviously resulted from a departure by the courts from one of the plainest principles or rules for the construction of statutes—to render them according to the natural and obvious import of the language used by the legislature; Waller v. Harris, (20 Wend. 561; 11 Clark & Fin. 143;) and when the words of an act are precise and unambiguous, to expound those words in their natural and ordinary sense. If the courts had uniformly adhered to this rule I cannot think there would have been so much confusion and uncertainty in regard to the true interpretation of this statute. The English courts started off and long continued in the practice, if not in the theory, of regarding the statute unfavorably, and its simple text was persistently, for many years, nullified, perverted or evaded by numerous decisions, each departure furnishing a precedent for another refinement more at variance than the first from the true intent and meaning of the statute. It was at one time most preposterously held that the *207 provision relating to the sale of goods did not apply to executory contracts, (and it is difficult to see how it really could apply to any others,) hut only applied to sales of goods deliverable immediately. But the most successful evasion of this portion of the statute, in England and in this country, has been accomplished under the guise that the contracts were for work and labor. . The language of the original statute is very plain. <chio contract for the sale of any goods, wares or merchandises for the price of ten pounds sterling or upwards, shall be allowed to be good except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest, or that some note or memorandum of it in writing be made and signed.” The language of our statute is equally plain, clear and explicit. “ Every contract for the sale of any goods, chattels or things in action, for the price of 150 or more, shall be void unless” &c. The test of the statute/ applied to every case, is simply—is the contract for the sale of goods—is that the substance of the transaction, the intent and meaning of the contracting parties. If so, the contract is within the statute. One of the chief difficulties in the construction of this statute has arisen in respect to the class of contracts where something remained to be done in the construction or completion of the property before delivery. The cases, on this subject, divide themselves into two classes. One where the thing contracted for is really not in esse at the time of the contract, and is therefore incapable of being seen, inspected, delivered or accepted, but is to be thereafter manufactured. Such was the case in 1st Strange, of Town v. Osborn, which was a contract for the construction of a chariot; the case of Grover v. Buck, (3 Maule & Sel. 178,) which was the case of oak pins yet in the stub; and that of Crookshanks v. Burrel, (18 John. 58,) which was the case of a contract to .make the wood-work of a wagon. In this class of cases it is held, and very properly, that the contract is for work and labor, and not within the statute. Within this class come Courtright v. Stewart, (19 Barb. 455;) Parker v. *208 Schenck, (28 id. 38;) and Spencer v. Cone, (1 Met. 283.) The case of Mixer v. Howell, (21 Pick. 206,) was held by the court a contract “ to build a carriage for the defendant,” and upon this construction rightly belongs to this class of cases. The other class embraces cases where the thing covered by the contract has at the time of the contract a potential existence in solido, and something is to be done to it in the completion of it, or in putting it in proper marketable condition for use or sale. The later cases hold that in this class of cases the contract is within the statute. Of this class was Downs v. Ross, (23 Wend. 272,) where for the first time in this state, so far as relates to the question under discussion, the statute is applied, I think, so far as the cases are reported, according to its true spirit and intent. This was the case of a sale of wheat, part threshed and part unthreshed. This was held purely a sale of goods. So in Garbutt v. Watson, (1 D. & R. 219, 5 B. & Ald. 613, S. C.,) where the contract was for 300 sacks of flour not then ground, to be prepared and shipped at a future day. This was held a sale. There is also another class of cases where the thing sold is not in esse, but is to be thereafter manufactured, which divide themselves between these two classes, according to the particular circumstances of each case. The case of Bewail v. Fitch, (8 Cowen, 215,) belongs to this class, and was decided upon the rule applicable to the first class, but I think erroneously. It was really a contract of sale, in substance. The plaintiff applied to purchase nails and contracted for the sale of 300 casks of cut nails, and the clerk told him the quantity was not then on hand, but they could be obtained from the manufactory on the opening of navigation &c. This clearly was not a contract for work and labor. It seems to me preposterous, and a perversion of language, to call it a contract for the work and labor of manufacturing the nails. It wop a contract for the purchase of nails to be thereafter delivered. The party did not apply to the defendant t'a contract for a singular and unusual kind of nails to be specially jnanufac-
*209 tured for him,-like the case of the pump, in Parker v. Schenck, (supra,) or a single article like a wagon, as in Crookshanks v. Burrell. It is like the case of Gardner v. Joy, (9 Metc. 177,) in which the jdaintiff applied to purchase candles, and contracted for 100 boxes, which were to be thereafter manufactured by the defendant and delivered at a future period. The supreme court of Massachusetts held this to be a contract of sale, and within the statute. It was a contract to purchase and sell^candles to be delivered at a future time. In Mixer v. Howell, (21 Pick, 200,) which was the ettse of a buggy to be manufactured, the case was held not within the statute, for that reason. Judge Shaw says, “ When the contract of sale is either of an article then existing, or of articles which the vendor usually has for sale in the course of his business, the statute applies to the contract as well when it is to be executed at a future time as when it is to be executed immediately.” The principle of this class of cases applies to the present case. % The contract in this case was for the sale of a monument for the price of #200.' The plaintiff says he applied-to the defendant to buy a monument, and they finally agreed upon the sale of the monument particularly described, subject to the approval, on inspection, of the defendant's brother ; the brother saw it, approved of it, and told the defendant to finish it. The plaintiff then took it into his shop, polished the marble and put in the lettering and finished it up. Here was a case of the sale of a specific article in existence in solido, seen and inspected and capable of immediate delivery. It required some additional work upon it to render it marketable, as with the wheat, in Downs v. Boss, or the flour, in Garbut v. Watson ; but the substance of the transaction was a bargain and sale of the monument, not a contract for work and labor. If the marble had been in -the quarry, and the contract had been for the plaintiff to get it out and manufacture it, putting it into shape as a monument and perfecting it as such, that would have been a contract for work and labor" But the plaintiff kept these *210 monuments for sale. He had to polish them off and letter them, as occasion required, but he was his own workman ; the work he did on the monument was for himself, not for the plaintiff. Here was a monument sold for $200, and the worth $15 or $20. It is not in proof how much, but it obviously constituted, in value, but a very small proportion of the $200. As in the construction of the wagon, in the case in 20 John, (supra,) the raw materials were obviously of small T%lue compared with the labor, and so in most cases of that class. The bargain, in such cases, is for the skill and labor and services of the mechanic with the materials to be found. The contract in this case, as I look upon it, was a contract to sell the monument, and deliver it at a future day. In the meantime it was to be polished and lettered. This work and labor done upon it after the sale may have been work was included in the purchase price fixed at the time. The view of my brother Johnson, in effect, that the pieces of marble composing the monument in question did not constitute a monument while the same was in the plaintiff’s yard and shop, unfinished, and could only be fitly called a monument when put up in memorial of the dead, I cannot '<^appreciaté¡l:s When seen and inspected, in the plaintiff’s yard, the several pieces were in the precise shape and form in which they afterwards remained. They were together in such shape, put up. as designed, each stone in its proper place, and were together called, by the parties, a monument. It is true they were to be removed and placed at the grave of the deceased friends of the defendant, and would not actually constitute any memorial to the deceased until so placed. ut the business of the plaintiff was to get from the quarry, manufacture and keep for sale, various kinds of marble designed if he wanted a monument. ! The language was, “I asked him if he were ready to buy a monument.” The plaintiff proved by a witness that the defendant said “ he had bought a mom for grave stones and monuments.J He had been in this business for 25 years. He called on the plaintiff and asked him *211 ument of Mead.” The witness, Kelly, who heard the conversation between the parties, testified that “ plaintiff said to defendant that he would like to sell him a monument.” Another witness, who was present at the same time, said,
“ Plaintiff wanted to sell a monument.”
All the evidence tends to show that the contract was for the sale of a monument. It was spoken of as a thing then existing to be sold, not as a thing to be manufactured. They called it a monument with reference to the use for which it was designed. It -was a sale, if there were any bargain made, of the marble then comprising what the parties called a monument; as much so, in my opinion, as if the article had been a carriage, requiring for its completion an additional coat of paint or of varnish,, a tongue, or thills, or whiffletree or other like appendage. ¿The work to be done to finish the monument was not essential to its existence, character or design, but to its completeness and comeliness merelyf The legislation in England has put an end to all such questions in that country, by an act of the 9th of George 4, ch. 14, which enacts “that the provisions of the statute of frauds shall extend to all contracts for the sale of goods, and notwithstanding the goods may be intended to be delivered at some future time, or may not at the time of such contract be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for making or completing thereof or rendering the same fit for, delivery.” . The supreme court of Wisconsin, in Hardell v. Medium, (1 Chand. Rep. 278,) say of this act that they regard it as “ laying down no new principle, covering no new ground,” but as containing in remarkably clear, simple and explicit language “ the true construction of the original act.” To this I fully agree; and it seems that the late decisions had brought back the law before the passage of this act to about the same point, and conforming to the plain intent and fair interpretation of the original statute; particularly the case' of Garbut v. Watson, and Donn v. Ross, with which coincide Atkin *212 son v. Bell, (8 Barn. & Cress. 277,) and Smith v. Surman, (9 561.) In this latter case, which was an action for the sale of lumber, Bayley, J. says: “ The vendor, so long as he was felling the trees and preparing the timber for delivery, “ was doing work for himself, and not for the defendant.” So in this case, so long as the plaintiff was polishing and finishing up this monument he was doing work for himself. This, Judge Harris, in Comstock v. Stewart, (supra,) says presents the true rule in such cases. See also, Allen v. Jarvis, (20 Conn. Rep. 50,) where the same rule is asserted. The case of Donovan v. Willson, (26 Barb. 138,) is not in conflict with these views. In that case the contract was to “ manufacture, furnish and deliver beer.” It comes perhaps within the class of cases referred to by Chief Justice Shaw, “ where the workman is to put together materials and construct an article for the employer.” That case, however, was decided upon the authority of Bennett v. Hull, (10 John. 364,) in which the contract was to deliver 100 barrels of apples. The price exceeding $25, the court held that the contraqt was within the statute, and that the statute applied to executory contracts; and upon that of Crookshank v. Branch, and Small v. Freely, the first of which was rightly decided, and the latter, in effect, overruled in Donn v. Ross, and mistakenly followed and under protest, in Robertson v. Vaughn, (5 Sand. S. C. R. 1.) I have always doubted the correctness of the decision in the case of Donovan v. Wilson, but think it may possibly stand, upon the cases of Crookshank v. Bennett, and Mixer v. Howarth, (supra.) But I cannot but think that the case, as Judge Duer says, in Robertson v. Vaughn, was “ within the mischief the statute of' frauds was designed to prevent, and the contract between the parties was substantially a sale of goods and merchandise, and not for work and labor.” The statute of frauds was designed to prevent frauds and perjuries. Instead of fulfilling its office it has doubtless been the most prolific cause of-fraud and perjury of any statute ever enacted, and *213 since parties are permitted to be witnesses in their own favor, the temptations and facilities for committing perjury are obviously not so diminished as to make it wise to repeal the statute, or defeat its operation by further judicial refinements. | The tendency in all our courts, at the present day, is to construe the statute of frauds in all its particulars according to the obvious meaning and fair import of its language. (Mallory v. Gillett, 23 Barb. 612, recently affirmed in the Court of Appeals; Brewster v. Silence, 4 Seld. 211; 11 Barb. 144.) In the language of my brother Johnson, in the last case, I regard the statute as plain and imperative, and feel much more inclined to yield to its authority than to any array of opinions or dicta which have sought to evade or nullify it to save hard cases and prevent or remedy some particular act of injustice.” I think the motion for nonsuit should have been granted, and that the case should go back for a new trial. |
[Monroe General Term,
December 3, 1860.
Smith, Johnson, and Knox, Justices,]
Judgment affirmed.